IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–00391–MSK–KMT

PROCOM SUPPLY, LLC, a Colorado limited liability company,

     Plaintiff,

v.

MECHEL LANGNER, an individual,
BARBARA LANGNER, an individual,
AHARON MANN, an individual,
FIRST NATIONAL GROUP, LLC, a limited liability company,
L AND M REALTY BROKERS LLC, a limited liability company,
FIRST NATIONAL MANAGEMENT LLC, a limited liability company,
REAL INVESTORS LLC, a limited liability company,
RUEBEN GREEN, an individual, and
FRED P. SCHWARTZ, ESQ., an individual,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Kathleen M. Tafoya**

     This case comes before the court on four Motions for Entry of Default Judgment against

Defendants First National Group, LLC, L and M Realty Brokers, LLC, First National

Management, LLC, and Real Investors, LLC (Doc. Nos. 23, 24, 27, 54), and four Amended

Motions for Entry of Default Judgment against Defendants Mechel Langner, Barbara Langner,

Aharon Mann, and Rueben Green (Doc. Nos. 37, 38, 39, 40).

# I. BACKGROUND

This action commenced on February 14, 2012, at the filing of Plaintiff's Complaint against Defendants Mechel Langner, Barbara Langner, Aharon Mann, First National Group, LLC, L and M Realty Brokers, LLC, First National Management, LLC, Real Investors, LLC, Rueben Green, and Fred P. Schwartz, Esq.[1]  (Doc. No. 1.)  Between March 7 and April 2, 2012, each party was served with both the Summons and Complaint.  (Doc. Nos. 10-17, 19.)  All defendants failed to answer, move, or otherwise plead in response to the Complaint.

Plaintiff filed eight motions for entry of default judgment on April 18, 2012, and the ninth against Defendant First National Group, LLC on May 1, 2012.  (Doc. Nos. 20-27, 54.)  Plaintiff filed amended motions for entry of default judgment against five of the defendants on April 20, 2012.  (Doc. Nos. 37-41.)  The Clerk of Court entered default against Defendants L and M Brokers, LLC, First National Management, LLC, and Real Investors, LLC on April 20, 2012 (Doc. No. 36), entered default against Mechel Langner, Barbara Langner, Aharon Mann, and Rueben Green on April 23, 2012 (Doc. No. 42), and entered default against First National Group, LLC on May 2, 2012 (Doc. No. 59).

## II. JURISDICTION

Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, exclusive of interests and costs, and the matter is between citizens of different states.

---

[1] Motions related to Defendant Schwartz have been addressed in a separate Order.  (Doc. No. 86.)

### III. LEGAL STANDARD

Default must enter against a party who fails to appear or otherwise defend a lawsuit.  Fed. R. Civ. P. 55(a).  Pursuant to Rule 55(b)(1), default judgment must be entered by the clerk if the claim is for "a sum certain"; in all other cases, "the party must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.  In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.  The default judgment remedy serves as such a protection."  *In re Rains*, 946 F.2d 731, 732-33 (10th Cir. 1991) (internal quotation and citation omitted).  Further, "a party is not entitled to default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court."  *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (internal citations omitted.)

### IV. FACTS

The following facts in Plaintiff's Complaint are deemed admitted by the Defendants.  Beginning in 2006, Plaintiff Procom, through its member and agent, Mr. Wayne Dale, entered into a series of real estate transactions with Daniel Kasnett and his related business entities.  (Compl., ¶ 13.)  During 2006 and 2007 these real estate projects primarily involved the purchase and sale of houses in and around the Cleveland, Ohio area.  (*Id.*)  Following the completion of the sale of the houses in late 2007 or early 2008, Kasnett and his related business entities offered a prospectus and solicited Procom to invest in a multi-tenant condominium building at the Cleveland Clinic in Cleveland, Ohio ("Cleveland Project").  (*Id.*, ¶ 14.)

Based on Kasnett's representations, Procom invested $189,000 in the Cleveland Project and wired the funds to an account at Huntington National Bank in the name of Defendant Real Investors on September 25, 2008. (*Id.*, ¶¶ 15-16.) Defendant Rueben Green was a member of Defendant Real Investors in 2008 when Plaintiff transferred the funds. (*Id.*, ¶ 17.) Defendant Real Investors used $20,500 of the original investment to pay its own debts and expenses and/or make investments in its own name. (*Id.*, ¶ 18.)

On September 25, 2008, Defendant Real Investors transferred $150,000 of the investment from its bank account to a checking account in the name of Defendant First National Group at JP Morgan Chase Bank. (*Id.*, ¶ 19.) One day later, Defendant First National Group transferred $50,587.63 from its account to a line of credit account in the name of Defendant L and M Realty at JP Morgan Chase Bank. (*Id.*, ¶ 20.) Defendant L and M Realty used this deposit to pay down its outstanding line of credit loan with JP Morgan Chase Bank. (*Id.*) On September 29, 2008, Defendant First National Group transferred $45,000 from its checking account to a checking account in the name of Defendant L and M Realty at JP Morgan Chase Bank. (*Id.*, ¶ 21.) Defendant L and M Realty used $34,822.50 of these funds to pay its own debts and expenses and/or make investments in its own name. (*Id.*) On that same day, Defendant L and M Realty transferred the remaining $10,000 of the 45,000 it received from First National Group from its JP Morgan Chase Bank checking account to a bank account in the name of Defendant Aharon Mann also at JP Morgan Chase Bank. (*Id.*, ¶ 22.) Again on September 29, Defendant First National Group transferred $20,000 from its checking account to its own JPMorgan Chase Bank money market account, and used this money to pay down its debt with American Express. (*Id.*, ¶ 23.)

Defendant First National Group then transferred $10,000 from its checking account to another account at JP Morgan Chase Bank in the names of Defendants Mechel Langner and Barbara Langner.  (*Id.*, ¶ 24.)  Defendants Barbara and Mechel Langner used $7,000 of these funds to pay down their outstanding debt with American Express and transferred the remaining $3,000 to their offshore bank account with First International Bank of Israel.  (*Id.*)  Defendant First National Group again transferred $10,000 to the Defendants Barbara and Mechel Langner on September 29, 2008.  (*Id.*, ¶ 25.)  Defendant First National Group made its final transfer to Defendant First National Management on September 29, 2008, in the amount of $9,500.  (*Id.*, ¶ 26.)  On October 6, 2008, the Defendants Barbara and Mechel Langner transferred $15,000 to Defendant L and M Realty's checking account at JP Morgan Chase Bank.  (*Id.*, ¶ 25.)  The Cleveland Project never closed.  (*Id.*, ¶ 27.)

## V. ANALYSIS

Plaintiff requests compensatory damages, post-judgment interest, attorney's fees and costs, and exemplary damages. (Compl. at 8.)

***Original Investment***

Defendant's judgment cannot be entered until the amount of damages has been ascertained.  *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984).  Actual proof must support any default judgment for money damages where there is an uncertainty as to the amount.  *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949); *Top Rank, Inc. v. Fey*, No. 08-cv-00480-RPM, 2009 WL 1384171, at *3 (D. Colo. 2009).  In ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the

appropriate sum for the default. *Fanning v. Permanent Solution Industries, Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009).

Plaintiff provides detailed support for the original investment in the amount of $189,000 by way of a sworn affidavit from Mr. Wayne Dale, Managing Member of Plaintiff Procom regarding the transfer of the original investment (Doc. No. 74-1), deposition transcripts containing admissions of misappropriation of the original investment (Doc. No. 74-3), wire transfer forms (Doc. No. 74-4), and multiple bank statements detailing transfers (Doc. No. 74-5- 74-11). As Plaintiff's allegations that Defendant failed to hold the original investment and use it as the promissory note indicated are deemed admitted, Defendants have violated the civil theft statute by acting in a way that is practically certain to deprive Plaintiff of its funds. *U.S. ex. rel. Parker Sheet & Metal, Inc. v. Contractor's Bonding & Ins. Co.*, No. 11-cv-00745, 2012 WL 764472, at *2 (D. Colo. March 8, 2012). Accordingly, the sum owed may be reasonably ascertained, and Plaintiff may recover the original investment of $189,000 by default judgment. *Id.*

Joint and several liability is pertinent here because of the number of defaulting defendants and nature of the claim. *See Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985) (citing *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1262 (7th Cir. 1980)) ("The possibility of two distinct determinations as to the damages arising out of a single price-fixing claim is, indeed, an inconsistency . . . the joint nature of plaintiff's claim prohibits different findings as to the damages against all defendants"). Just as consistent verdict determinations are essential among joint tortfeasors, consistent damage awards on the same

6

claim are essential among joint and several tortfeasors.  *Hunt*, 770 F.2d at 148.  Here,

Defendants' actions in this case are joint in nature.  Therefore, Defendants in this case should be

held jointly and severally liable for all damages awarded.

***Treble Damages***

    The court also finds that treble damages are appropriate.  Plaintiff seeks treble damages

pursuant to Colo. Rev. Stat. § 18-4-405, Civil Theft.  In an action to recover property obtained

by theft, "the owner may recover two hundred dollars or three times the amount of the actual

damages sustained by him, whichever is greater" in addition to recovery of costs and reasonable

attorney's fees.  *See* Colo. Rev. Stat. § 18-4-405.  Moreover, a civil plaintiff must at least

establish that the defendant was aware that the manner of using the investment was "practically

certain" to result in depriving the plaintiff of his funds.  *U.S. ex. rel. Parker Sheet & Metal, Inc.*,

2012 WL 764472 at *2.  Based on the facts alleged in the Complaint being deemed admitted,

Defendants failed to use the original investment for Plaintiff's intended purpose, and instead

used the original investment for personal and business related expenses independent of

Plaintiff's purpose, thereby violating the civil theft statute by acting in a way that is practically

certain to deprive Plaintiff of its funds.  *Id.*  As a result, Plaintiff is entitled to its actual damages

of $189,000, trebled to $567,000.  *See id.* (default judgment granted and treble damages awarded

against defendants who violated the Colorado Trust Fund Statute and committed civil theft).

***Attorney Fees***

    In addition to treble damages, Colo. Rev. Stat. § 18-4-405 entitles a plaintiff to attorney

fees.  § 18-4-405.  Plaintiff's counsel offers a clear, ascertainable claim for attorney's fees in his

sworn affidavit and supporting exhibits.  (Doc. No. 69.)  This court uses the "lodestar" method in determining the reasonableness of the attorney's fees requested.  *See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 703 F. Supp. 2d 1243 (D. Colo. 2010) (offering an in-depth application of the lodestar method to determine the reasonableness of attorney's fees).  The analysis for this court to follow in calculating a reasonable fee is based upon guidance founded in the Supreme Court's opinion in *Hensley v. Eckerhart*.  "First, the court must calculate the lodestar amount, which is comprised of the number of hours reasonably expended in the litigation multiplied by the reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Counsel seeking attorney's fees must keep sufficient records for a court to determine which hours are reasonably expended on a case.  *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983).  "When scrutinizing the actual hours reported, the district court should distinguish 'raw' time from 'hard' or 'billable' time to determine the number of hours reasonably expended."  *Id.*

As to the hourly rate, the Tenth Circuit indicates that "the court must look to 'what the evidence shows the market commands for civil rights or analogous litigation.' "  *Burch v. La Petite Acad., Inc.*, 10 F. App'x 753, 755 (10th Cir. 2001) (quoting *Case v. Unified School Dist.*, 157 F.3d 1243 (10th Cir. 1998)).  The "local market rate" is usually the state or city in which counsel practices.  *Ellis v. Univ. of Kansas Medical Center*, 163 F.3d 1186, 1203 (10th Cir. 1998) (looking at "the prevailing market rates in the relevant community"); *Case*, 157 F.3d at 1256 (looking at fees charged by lawyers in the area in which the litigation occurs).  The court in *Center for Biological Diversity* decided that $400 was a reasonable hourly rate for a Denver attorney with seventeen years of litigation experience.  *Ctr. for Biological Diversity*, 703 F.

Supp. 2d at 1249-50; *see also Wilderness Society v. Wisely*, 524 F. Supp. 2d 1285 (D. Colo. 2007) (awarding the same attorney $400/hr based on the lodestar analysis).  Mr. Leffert has been a trial attorney for over thirty years and has extensive trial experience in both federal and state courts throughout the country.  (Doc. No. 69 at 2.)  The hourly rate for Mr. Anthony Leffert is $325; his associate, Ms. Laura Ellenberger, has an hourly rate of $205; and his paralegal, Ms. Elizabeth Garfield, has an hourly rate of $115.  (*Id.* at 3.)  These hourly rates, compared to Denver's market rate, are reasonable.

Mr. Leffert billed 24.1 hours to Plaintiff, his associate billed 6.4 hours, and his paralegal billed 32.1 hours.  (Doc. No. 69 at 3.)  In determining the reasonableness of the hours expended, the court must consider several factors, including: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to the counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to a specific task.  *Ctr. for Biological Diversity*, 703 F. Supp. 2d at 1247; *Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987).  The *Ramos* court suggested that whether the tasks being billed "would normally be billed to a paying client" aids in determining reasonableness.  *Ramos*, 713 F.2d at 554.  As previously noted, Mr. Leffert's experience in finance and business law is extensive, his associate's experience in finance is also extensive, and his paralegal has been employed as such in Colorado for nearly thirty years.  (Doc. No. 69 at 2.)  In accordance with the *Ramos* court and the *Center for Biological Diversity*

9

court, the hours billed by Plaintiff's counsel here would normally be billed to a paying client.

*Ramos*, 713 F.2d at 554; *Ctr. for Biological Diversity*, 703 F. Supp. 2d at 1248.  In considering

that there are eight Defendants against whom Plaintiff seek default judgment, and also

considering the Complaint, Amended Complaint, and motions for entry of default judgment

Plaintiff's counsel drafted and filed, this court finds the billed hours reasonable.  Moreover, upon

review of the billing invoices, the court finds them to be sufficiently detailed.  Accordingly, the

court should award Plaintiff the requested $12,835.50 in attorney's fees.[2]

### Costs

Pursuant to Fed. R. Civ. P. 54(d)(1) and local rule D.C.Colo.LCivR 54.1, to receive costs,

Plaintiff must file a separate bill of costs within fourteen days of entry of judgment, upon which

time the clerk may award reasonable costs to be taxed accordingly.  The court finds the Plaintiff

should be allowed to file an appropriate bill of costs upon entry of final judgment.

### Interest

Interest questions in suit on contract in federal court are determinable by state law,

whether jurisdiction is founded on federal question or diversity of citizenship.  *Rocky Mountain

Tool & Mach. Co. v. Tecon Corp.*, 371 F.2d 589, 596 (10th Cir. 1966) (citing *Illinois Surety Co.

v. John Davis Co.*, 244 U.S. 376 (1917)).

---

[2]Plaintiff's submission of the sworn affidavit and accompanying exhibits appropriately does not include any fees incurred related to the Motion for Entry of Default Judgment as to Defendant Fred. P. Schwartz (Doc. No. 26) and Defendant Schwartz's Motion for Relief from Default, pursuant to this court's Order granting relief from entry of default to Defendant Schwartz (Doc. No. 64). *See* Doc. No. 69 at 3.

Prejudgment and post-judgment interest are both appropriate here. Plaintiff's entitlement to prejudgment interest under Colo. Rev. Stat. § 5-12-102 is supported by Colorado authority holding that prejudgment interest "accrues in a property damage case from the time the cause of action accrued; in other words, from the date on which the injured party was wronged." *Fed. Ins. Co. v. Ferrelgas, Inc.*, 961 P.2d 511, 514 (Colo. App. 1997); *See Isbill Assocs., Inc. v. City & County of Denver*, 666 P.2d 1117, 1122 (Colo. App. 1983) (upholding prejudgment interest award from time property was damaged). By statute, prejudgment interest is awarded "from the date of wrongful withholding." Colo. Rev. Stat. § 5-12-102(1)(a). *See Seaward Const. Co. v. Bradley*, 817 P.2d 971, 975 (Colo. 1991) ("addition of prejudgment interest to a judgment for compensatory damages recognizes that the loss caused by the tortious conduct occurred at the time of the resulting injury but that the damages paid to compensate for that loss are not received by the injured party until later"). Therefore, Plaintiff is entitled to eight percent interest per annum from the date that the original investment was transferred until judgment is entered because the original investment was never used for its intended purpose. Colo. Rev. Stat. § 5-12-102; *See Remote Switch Systems, Inc. v. Delangis*, 126 P.3d 1052, 54 (Colo. App. 2005) (noting that the employee, who prevailed in an action against his employer to recover wages that were wrongfully withheld when he left the company, was entitled to an award of prejudgment interest of eight percent calculated on his award from the effective date of his resignation from the company to the date of final judgment).

Post-judgment interest is calculated based on the total amount of trebled damages. Therefore, Plaintiff is entitled to post-judgment interest at a rate of eight percent per annum.

Colo. Rev. Stat. 18-4-405; Colo. Rev. Stat. 12-2-205; *see Emarine v. Haley*, 892 P.2d 343, 364

(Colo. App. 1995) (discussing the applicable interest to trebled damages and determining that

interest on treble damages runs from entry of judgment).

An award of punitive damages is unliquidated until the date of judgment.  The award of

punitive damages is to punish and deter such conduct in the future, not to compensate for the

wrongful delay in obtaining money or property.  *Coale v. Dow Chemical Co.*, 701 P.2d 885

(Colo. App. 1985).  Treble and punitive damages serve similar purposes.  *Lexton-Ancira Real*

*Estate Fund v. Heller*, 826 P.2d 819 (Colo. 1992).  Because a party's entitlement to punitive

damages does not arise unless and until such damages have been awarded by the trier of fact,

*Seaward Constr. Co. v. Bradley*, 817 P.2d 971 (Colo. 1991), prejudgment interest is not allowed

on punitive damages.  *Ballow v. PHICO Ins. Co.*, 878 P.2d 672 (Colo. 1994).

WHEREFORE, for the foregoing reasons, the court

**RECOMMENDS**

1.    The Motions for Entry of Default Judgment against Defendants Mechel Langner, Barbara

Langner, Aharon Mann, First National Group, LLC, L and M Realty Brokers, LLC, First

National Management, LLC, Real Investors, LLC, and Rueben Green. (Doc. Nos. 23, 24,

27, 37, 38, 39, 40, 54) be GRANTED and that default judgment be entered in favor of

Plaintiff and against these Defendants, jointly and severally, including pre-judgment

interest on the original investment at a rate of 8% per annum, $567,000 in trebled

damages, post-judgment interest on the trebled damages amount at an rate of 8% per

annum, and $12,835.50 in attorney's fees; and

12

2.      That the Plaintiff, upon entry of final judgment, be awarded costs against these

Defendants by filing an appropriate bill of costs pursuant to Local Rule 54.1.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 11th day of July, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge