**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:12-cv-00391-MSK

PROCOM SUPPLY, LLC, a Colorado limited liability company,

Plaintiff,

v.

MECHEL LANGNER, an individual, BARBARA LANGNER, an individual, AHARON MANN, an individual, FIRST NATIONAL GROUP, LLC, a limited liability company, L AND M REALTY BROKERS, LLC, a limited liability company, FIRST NATIONAL MANAGEMENT, LLC, a limited liability company, REAL INVESTORS, LLC, a limited liability company, RUEBEN GREEN, an individual, and FRED P. SCHWARTZ, ESQ., an individual.

Defendants.

---

**DEFENDANT MECHEL LANGNER'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR,
IN THE ALTERNATIVE, TO QUASH SERVICE OF PROCESS**

---

Defendant Mechel Langner, by and through the undersigned counsel, Jim Miles and Peggy Kozal, of the law firm of Miles & Peters, P.C., hereby files Mechel Langner's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Quash Service of Process ("Motion") as follows:

### I.     INTRODUCTION AND BACKGROUND

1.     Pursuant to D.C.COLO.LCivR 7.1A, no conferral occurred, as this Motion requests relief pursuant to Fed.R.Civ.P. 12(b).

2.     On October 25, 2012, Procom Supply, LLC ("Procom") filed its Amended Verified

Complaint and Jury Demand (the "Amended Complaint").[1] Procom attempted to serve the Amended Complaint on Defendant Mechel Langner on November 15, 2012. However, for the reasons stated below, Mr. Langner was not properly served.

3. The sole basis for Procom to be bringing this action in a Colorado court relates to Procom maintaining a principal place of business located in Denver. Mr. Langner, however, has not had any contacts with Colorado to support the Court's exercise of personal jurisdiction of him in this matter. Mr. Langner is a resident of and domiciled in Israel. **Ex. A**, Aff. of M. Langner, ¶2. Israel has been his residence and domicile for approximately 15 years. *Id.*

4. The focus of Procom's Amended Complaint centers on the actions of Daniel Kasnett, an individual who is not a defendant in this lawsuit. Procom claims that Mr. Kasnett made several false representations to Procom which caused Procom to invest $189,000 (the "Invested Funds") in a multi-tenant condominium building in Cleveland, Ohio (the "Cleveland Project"). Am. Complaint, ¶¶17-20.[2]

5. Procom alleges that the Cleveland Project did not exist and that Mr. Kasnett caused the Invested Funds to be used for other purposes. *Id.* According to Procom's Complaint, Mr. Kasnett wired the Invested Funds to a bank account in the name of Real Investors LLC ("Real Investors"). *Id.* at ¶22. After this point, Procom alleges that money, a fungible object, was transferred from Real Investors to Defendants other than Mr. Langner. *See id.* at ¶¶ 22-24. Mr. Langner was neither the managing member nor a person who was controlling Real Investors at the

---

[1] Plaintiff's original Complaint and Jury Demand was dismissed when, on October 11, 2012, the Court issued an Opinion and Order Denying Plaintiff's Motions for Default Judgment and Dismissing Action for Lack of Subject Matter Jurisdiction (the "Order of Dismissal"). After dismissing the action for lack of subject matter jurisdiction, the Court permitted Procom 14 days to file an amended Complaint.

[2] In a deposition taken of Mr. Kasnett, he admitted to repeatedly lying to Mr. Dale about the Invested Funds, inventing names for individuals who do not exist in order to perpetrate a fraud on Mr. Dale and falsifying documents. *See* Am. Complaint, Ex. 2, 57:6-76:13.

time of these transfers; Defendant Schwartz and Reuben Green[3] held those roles. *Id.* at ¶¶ 16; Am. Complaint, Ex. 1, 61:1-4.

6. After the transfer of money to Real Investors, Procom alleges that a series of other transactions occurred wherein money was transferred into limited liability companies who are other Defendants in this action. Am. Complaint at ¶¶22-28. Procom claims that eventually $20,000 of the Invested Funds were transferred into a checking account and money market account in the names of Mr. Langner and his mother, Barbara Langner. *Id.* at ¶¶29-30. These accounts were maintained in New York. Am. Complaint, Exs. 5 and 10.

7. Mr. Langner has never met Wayne Dale (the owner and sole member of Procom) or anyone else from Procom. **Ex. A**, Aff. of M. Langner, ¶4. He never acted with sufficient contacts for this Court to assert jurisdiction over him. Even pursuant to Procom's allegations, the only way in which Mr. Langner can be even conceivably included in this lawsuit is due to him maintaining bank accounts in New York. These bank accounts in New York, however, do not establish sufficient minimum contacts in Colorado such that Mr. Langner could ever reasonably anticipate being haled into a Colorado court.

## II. ARGUMENT

**A. The Court does not have personal jurisdiction over Mr. Langner.**

8. Mr. Langner does not have sufficient minimum contacts with Colorado to support the Court's exercise of personal jurisdiction. Plaintiffs bear the burden of establishing personal jurisdiction over defendants. *OMI Holdings, Inc. v. Royal Insurance Company of Canada*, 149 F.3d 1086, 1091, (10th Cir. 1998). Here, Procom failed to plead facts sufficient to establish that Colorado

---

[3] Reuben Green was named as a Defendant in the original Complaint but has not been included as a Defendant in the Amended Complaint.

has jurisdiction over Mr. Langner.

9. Colorado's long-arm statute is coextensive with constitutional limitations. Therefore, the determination collapses into a single inquiry: whether jurisdiction is consistent with the Due Process Clause. *See Benton v. Cameco Corp.,* 375 F.3d 1070, 1075 (10th Cir. 2004), *cert. denied,* 544 U.S. 974 (2005); *Kriston v. Peroulis*, 2010 WL 1268087 (D.Colo. March 29, 2010).

10. The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. *OMI Holdings*, 149 F.3d at 1090. Therefore, a court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state, such that to defend a lawsuit there would not offend traditional notions of fair play and substantial justice. *Id. See also Shrader v. Biddinger,* 633 F.3d 1235, 1239 (10th Cir. 2011). "The requirement that 'minimum contacts' be present protects a defendant, who has no meaningful contact with a state, from the burden of defending a lawsuit far from home in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar." *Id.*

11. The minimum contacts standard may be met in two ways. First, where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nevertheless maintain *general* jurisdiction over a nonresident defendant for all claims when the defendant has "continuous and systematic general business contacts" with the forum state. *OMI Holdings*, 149 F.3d at 1091. Second, a court may maintain *specific* jurisdiction over a nonresident defendant if the defendant has "purposefully directed" his activities at residents of the forum state and if the claims asserted in the litigation "arose out of or relate to" those purposeful activities. *Id.*

      **a.**     **General Jurisdiction**

12.    A court may assert personal jurisdiction over a defendant for any claim, whether arising from activities in the state or not, based on the defendant's "continuous and systematic" business contacts with the state. *OMI Holdings*, 149 F.3d at 1091. "However, because general jurisdiction is not related to events giving rise to the suit, courts impose a more stringent minimum contacts test…." *Id.* In determining whether a defendant's contacts with the forum state are continuous and systematic, courts have considered: (1) whether the corporation solicits business in the state through a local office or agent; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forums state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 457 (10th Cir. 1996); *Grynberg v. Ivanhoe Energy*, 666 F. Supp.2d 1218, 1230 (D.Colo. 2010). Perhaps most importantly, "[s]imply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there." *Shrader*, 633 F.3d at 1246-47.

13.    Here, Procom has offered no facts showing that Mr. Langner has the kind of continuous and systematic contacts with Colorado necessary to assert general jurisdiction. Indeed, such a showing would not be possible. Mr. Langner does not maintain continuous and systematic contacts with Colorado. **Ex. A**, Aff. of M. Langner at ¶6. He does not himself, or through agents, solicit business in Colorado. *Id.* He has not done and does not do business in Colorado, through advertisements, listings or bank accounts. *Id.* Therefore, general jurisdiction does not exist.

### b. Specific Jurisdiction

14. The specific jurisdiction inquiry is two-fold. First, the court must determine whether the defendant has sufficient minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *OMI Holdings*, 149 F.3d at 1091. "Within this inquiry, [a court] must determine whether the defendant purposefully directed his activities at residents of the forum, and whether the plaintiff's claim arises out of or results from actions by the defendant *himself* that create a substantial connection with the forum state." *Id.* (internal citations omitted). There are insufficient minimum contacts with the forum state when there is no evidence that the defendant's alleged tort had any connection to the forum state beyond the plaintiff's corporate domicile. *Grynberg,* 666 F. Supp. 2d at 1234.

15. Second, if the defendant's actions create sufficient minimum contacts, a court must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *OMI Holdings*, 149 F.3d at 1091. "This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *Id.*

16. Mr. Langner has had insufficient contacts with Colorado in order for him to reasonably anticipate being haled into a Colorado Court. Procom's claims do not arise out of or result from actions by Mr. Langner himself that create a connection with Colorado. Mr. Langner never entered into any type of business transaction with Mr. Dale or Procom and never solicited money from Procom. **Ex. A**, Aff. of M. Langner at ¶4. Mr. Langner's alleged tort has no connection to Colorado. Indeed, the allegations regarding the transfer of monies to Mr. Langner occurred from a bank located in Maryland to a bank located in New York. Am. Complaint, ¶¶ 29-

30; Exs. 5 and 10 to Am. Complaint.

17.     Procom's only allegations concerning Colorado are that Procom is a Colorado limited liability company and that Mr. Dale is domiciled in Colorado. Until receiving the Complaint Mr. Langner had never even heard of Procom. **Ex. A**, Aff. of M. Langner at ¶4. He has never met or spoken with a Procom representative or Wayne Dale, who Plaintiff alleges is the owner and sole member of Procom. *Id.* He never entered into any type of business transaction with Mr. Dale. *Id.* He has never entered into any type of business transaction involving Colorado real estate. *Id.* at ¶6.

### i.     Purposeful Availment

18.     Procom has presented no evidence which establishes that Mr. Langner purposefully availed himself of the privilege of doing business in Colorado. "Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state." *OMI Holdings*, 149 F.3d at 1092. Thus, courts have been unwilling to assert personal jurisdiction over a foreign defendant where the defendant's contacts with the forum state arose from the unilateral acts of someone other than the defendant. *Id.* Similarly, courts have been unwilling to assert personal jurisdiction where a defendant's contacts with the forum state were "random, fortuitous, or attenuated." *Dudnikov*, 514 F.3d at 1071.

19.     In *Dudnikov*, the Tenth Circuit distilled the Supreme Court's decision in *Calder v. Jones,* 465 U.S. 783 (1984), and delineated three salient factors that together indicate "purposeful direction" – (1) intentional conduct by the defendant, (2) expressly aimed at the forum state, with (3) knowledge that the brunt of the injury would be felt in the forum state. *Dudnikov,* 514 F.3d at 1072. The Tenth Circuit has "taken a somewhat more restrictive approach, holding that the forum state itself must be the focal point of the tort." *Id.* at 1075, fn. 9. In similar fashion, the Colorado

Supreme Court clarified *Calder's* applicability to the Colorado long-arm statute. *Archangel Diamond Corp v. Lukoil*, 123 P.3d 1187, 1200 (Colo. 2005). Under *Archangel*, the out-of-state actions of out-of-state actors cannot form the basis for an exercise of Colorado's long-arm statute unless the actions are "expressly aimed" at Colorado and Colorado is the "focal point" of the tort and the injury.

20.     Here, Colorado is far from any "focal point" of the tort for which Procom alleges Mr. Langner is liable. Indeed, Procom makes no allegations whatsoever of any contacts with Colorado by Mr. Langner, and such allegations are not possible. Mr. Langner has had no type of continuing relationship or obligation with a resident of Colorado which is even remotely connected to the allegations pled by Procom. **Ex. A**, Aff. of M. Langner at ¶7. His conduct was not "expressly aimed" at Colorado. Indeed, Mr. Langner has not committed a single act of intentional conduct aimed at Colorado with knowledge that the brunt of any injury would be felt in Colorado.

### ii.     Arising Out Of

21.     Due process next requires the Court to determine whether the plaintiff's claims arose out of the defendant's contacts with the forum state. In making this determination, the Tenth Circuit has rejected the loose "substantial connection" test adopted by a few courts and insisted on retaining a true "causal connection" requirement. *Shrader*, 633 F.3d at 1246, fn 8.

22.     Here, Mr. Langner had neither a causal nor a substantial connection with Colorado. Mr. Langner resides in Israel. **Ex. A**, Aff. of M. Langner at ¶2. He has never resided in Colorado, owns no property in Colorado, and is not employed in Colorado or by any Colorado employer. *Id.* at ¶6. Mr. Langner does not maintain an office, telephone listing or bank account in Colorado. *Id.* He does not have any employees in Colorado, solicit business in Colorado or pay taxes in Colorado. *Id.*

Procom's claims cannot be construed to have arisen out type of contact by Mr. Langner with Colorado. None of Mr. Langner's alleged conduct remotely connects to Colorado.

### iii. Fair Play and Substantial Justice

23. If the first prong of the analysis has been satisfied by a defendant's minimum contacts with the forum state, the court must then consider the quality of those contacts to determine whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *OMI Holdings*, 149 F.3d at 1095. In assessing the reasonableness of asserting personal jurisdiction, courts consider: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies. *Id.*

24. While not dispositive, the burden on the defendant of litigating a case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction. *Id.* at 1096. "When the defendant is from another country, this concern is heightened and great care and reserve should be exercised before personal jurisdiction is exercised over the defendant." *Id.* Given that Mr. Langner resides in Israel, the burden of him having to litigate a case in Colorado is tremendous.

25. The alleged transfer of monies to Mr. Langner occurred outside of Colorado. Procom could receive convenient and effective relief in another forum against Mr. Langner. *See OMI Holdings*, 149 F.3d at 1097. Procom's chances of recovery would not be affected by forcing it to litigate in another forum because of that forum's laws. *Id.* Procom's allegations center around Procom's investment in a real estate project that was allegedly located within Cleveland, Ohio, and the largest concentration of witnesses appears to reside in either Ohio or New York. Am. Complaint,

9

¶¶ 13 and 18.

26.     Exercising personal jurisdiction in Colorado would affect the policy interests of Israel, as Mr. Langner is a citizen of and domiciled in Israel and Colorado law would govern this dispute.

27.     In sum, the notions of fundamental fairness inherent in the Due Process Clause preclude this Court from exercising jurisdiction over Mr. Langner.  Colorado has no genuine interest in the dispute and Mr. Langner has no contacts with this state.

**B.     Mr. Langner was not properly served with the Amended Complaint.**

28.     Under the provisions of Fed.R.Civ.P. 12(b)(5), the Court may dismiss or, in the alternative, quash service of process.  It is undisputed that the procedural requirement of service of summons must be satisfied before a federal court may exercise personal jurisdiction over a defendant. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987).  The party on whose behalf service has been made has the burden of establishing its validity. See *Wright & Miller* § 1353; See also, *Fed. Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir. 1992).  Service is governed generally by Fed.R.Civ.P. 4.  A court may dismiss a complaint for ineffective service of process pursuant to Fed.R.Civ.P. 12(b)(5) if the plaintiff fails to establish that he has properly effectuated service pursuant to Fed.R.Civ.P. 4.  *Id.*

29.     Procom did not properly serve Mr. Langner with the Amended Complaint.  At the time of service of the Amended Complaint, Mr. Langner resided and was domiciled in Israel.  **Ex. A**, Aff. of M. Langner at ¶2.  Mr. Langner does not "occasionally reside" in Jerusalem, Israel, as Procom's Amended Complaint contends.  *Id.*  Rather, Israel has been Mr. Langner's residence and domicile for approximately 15 years. *Id.*  Not only is he physically present in Israel on a permanent

10

basis, he has the intent to remain there indefinitely. *Id.*

30. The Affidavit of Service that Procom filed with the Court on November 30, 2012 indicates that the Summons and Amended Complaint were served by affixing a copy to the door of the residence located at 406 Avenue I, Brooklyn, New York 11230 (the "406 Avenue I Residence") and then mailing a copy of the Amended Complaint to the same address. **Ex. B**, Aff. of Service for M. Langner. The last time that Mr. Langner resided at the 406 Avenue I Residence was approximately 15 years ago. **Ex. A**, Aff. of M. Langner at ¶3. The 406 Avenue I Residence has not been his actual place of business, dwelling place or usual place of abode during any time relevant to this lawsuit. *Id.*

31. The Affidavit of Service indicates service was made in accordance with Fed.R.Civ.P. 4(e) and N.Y. C.P.L.R. 308 (McKinney 2012). Given that Mr. Langner's domicile is Israel, service under these rules was improper. Pursuant to Fed.R.Civ.P. 4(f), when serving an individual in a foreign country, service may be made by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 621 (the "Hague Convention"). Fed.R.Civ.P. 4(f). Israel has ratified, acceded to, and is a party to the Hague Convention.[4] Pursuant to the Hague Convention, service must have been achieved by submitting a request in duplicate and two sets of the Amended Complaint to Israel's Central Authority for the Hague Service Convention (the "Israeli Central Authority"). *See* the Hague Convention, Arts. 2 and 3. Once the Israeli Central Authority receives such a request, it then serves the documents or arranges to have them served by an appropriate agency in the methods permitted by the Hague Convention. *See* the Hague Convention, Art. 5.

32. When serving Mr. Langner, Procom did not follow the requirements of the Hague

---

[4] *See* http://www.hcch.net/index_en.php?act=states.details&sid=45.

Convention and instead served him at an address he has not resided at for 15 years. Accordingly, the Court should dismiss Procom's Amended Complaint for ineffective service of process.

### III.     CONCLUSION

33. For the reasons expressed above, the Court should grant this Motion and dismiss Procom's claims against Mr. Langner for lack of personal jurisdiction.

WHEREFORE, Defendant Mechel Langner respectfully requests moves this Court for an order granting this Motion and dismissing Procom's Amended Complaint for lack of personal jurisdiction. In the alternative, Defendant Mechel Langner respectfully requests that this Court dismiss Procom's Amended Complaint for ineffective service of process.

Dated this 23rd day of April, 2013.

                                                MILES & PETERS, P.C.

                                                *s/ Peggy Kozal*
                                                Jim Miles, #27413
                                                Peggy E. Kozal, #33700
                                                Attorneys for Defendant
                                                MILES & PETERS, P.C.
                                                450 E. 17th Avenue, Suite 220
                                                Denver, Colorado 80203
                                                303.892.9900
                                                *Attorneys for Defendant Mechel Langner*

# CERTIFICATE OF SERVICE

    I hereby certify that on this 23rd day of April, 2013, a true and correct copy of the foregoing was served via the Electronic Case Files system on the following:

Anthony L. Leffert
Robinson Waters & O'Dorisio, P.C.
1099 18th Street, Suite 2600
Denver, Colorado 80202
*Attorney for Plaintiff*

Eric H. Zarans
Zagrans Law Firm, LLC
24500 Chagrin Boulevard, Suite 200
Cleveland, Ohio 44122
*Attorney for Defendant Fred P. Schwartz*

                     *s/ Autumn Phillips*

                     Autumn Phillips