IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–00391–MSK–KMT

PROCOM SUPPLY, LLC, a Colorado limited liability company,

    Plaintiff,

v.

MECHEL LANGNER, an individual,
BARBARA LANGNER, an individual,
AHARON MANN, an individual,
THE FIRST NATIONAL GROUP, LLC, a limited liability company,
L AND M REALTY BROKERS LLC, a limited liability company,
FIRST NATIONAL MANAGEMENT LLC, a limited liability company,
REAL INVESTORS LLC, a limited liability company, and
FRED P. SCHWARTZ, ESQ., an individual,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on Plaintiff Procom Supply, LLC's ("Procom")

"Motion for Entry of Default Judgment." (Doc. No. 99, filed Jan. 8, 2013.) Procom seeks

default judgment against Defendants Aharon Mann, First National Group LLC, L and M Realty

Brokers LLC, First National Management LLC , and Real Investors LLC (collectively the

"Defaulting Defendants").[1] For the following reasons, the court respectfully recommends that Procom's Motion for Default Judgment be DENIED.

## FACTUAL BACKGROUND

The following factual background is derived from Procom's Amended Complaint. (Doc. No. 99, filed Oct. 25, 2012.) Procom alleges that the Defendants conspired to solicit and convert or steal $189,000 from it.

In 2006 and 2007, prior to the events giving rise to Procom's claims, Mr. Wayne Dale, the sole member of Procom, and Mr. Daniel Kasnett, a non-party, entered into and completed a series of real estate transactions involving the purchase and sale of homes the Cleveland, Ohio area. (*Id.* ¶ 17.) After those homes were sold in late 2007 or early 2008, Mr. Kasnett and his "related business affiliates" solicited Procom to invest in a multi-tenant condominium building near the "Cleveland Clinic" in Cleveland (the "Cleveland Project"). (*Id.* ¶ 18.)

Based upon Mr. Kasnett's representation that Procom's investment would be used for the development of real estate, Procom agreed to invest $189,000 (the "Invested Funds") in the Cleveland Project. (*Id..*) However, Mr. Kasnett and Procom never executed any written contract or other documents regarding this investment. (*Id.* ¶ 20.) Instead, their unwritten agreement was that Procom would invest $189,000 in the Cleveland Project as an equity investor and would be compensated for the Invested Funds from the profits of the Cleveland Project upon completion.

---

[1] Originally, Procom's Motion for Default Judgment also sought default judgment against Defendants Mechel and Barbara Langner (the "Langner Defendants"). However, the court has since set aside the entries of default and denied Plaintiff's Motion for Default Judgment as to the Langner Defendants only. (*See* Minute Order, Doc. No. 119, filed Apr. 8, 2013.)

(*Id.*)  Accordingly, at Mr. Kasnett's direction, Procom wired the Invested Funds to a bank account in the name of Defendant Real Investors LLC on or about September 25, 2008.  (*Id.* ¶ 22.)

According to Procom, however, Mr. Kasnett's representations regarding the Cleveland Project were false.  (*Id.* ¶ 20.)  In fact, the Cleveland Project never existed.  (*Id.*)  Instead, Mr. Kasnett allegedly used the Cleveland Project as a way to fraudulently obtain the Invested Funds from Procom in order to distribute those funds to Defendants for their personal use.  (*Id.* ¶¶ 20-21.)

The same day that Procom wired the funds to Real Investors' bank account, $150,000 was transferred from Real Investors LLC bank account to a checking account in the name of Defendant First National Group.  (*Id.* ¶ 22.)  Then, on or about September 26, 2008, one day later, Defendant First National Group transferred $50,587.63 from its checking account to a line of credit account in the name of Defendant L and M Realty.  (*Id.* ¶ 23.)  Defendant L and M Realty alleged used this $50,587.63 to pay down its outstanding line of credit loan with JP Morgan Chase Bank.  (*Id.* ¶ 23.)

A series of similar transactions occurred three days later on or about September 29, 2008. First, Defendant First National Group transferred $20,000 from its checking account to its own money market account and allegedly used that money to pay down its debt with American Express.  (*Id.* ¶ 28.)  Second, Defendant First National Group transferred $45,000 to a checking account in the name of Defendant L and M Realty.  (*Id.* ¶ 26.)  Defendant L and M Realty alleged used $34,822.50 of these funds to pay debt or expenses and/or make investments in its

own name. (*Id.*) Defendant L and M Realty then transferred the remaining $10,000 of the $45,000 it received from Defendant First National Group to a bank account in the name of Defendant Aharon Mann. (*Id.* ¶ 27.)

Third, First National Group transferred $10,000 to a checking account in the name of Defendant Mechel Langner or Defendant Barbara Langner. (*Id.* ¶ 29.) The Langner Defendants allegedly used $7,000 of these funds to pay down their outstanding debt with American Express and transferred the remaining $3,000 to an offshore bank account. (*Id.*) First National Group also transferred an additional $10,000 to a money market account held in the name of Mechel Langner or Barbara Langner, who later transferred $15,000 to a checking account held in the name of Defendant L and M Realty. (*Id.* ¶ 30.) Finally, Defendant First National Group transferred $9,500 from its checking account to an unknown bank account in the name of Defendant First National Management. (*Id.* ¶ 31.)

In the meantime, Mr. Kasnett repeatedly represented to Mr. Dale that the Cleveland Project was progressing and even told Mr. Dale that the project had been completed. (*Id.* ¶ 32.) After discovering that its Invested Funds had not actually been invested in the Cleveland Project, Procom demanded that Defendants return those funds to Procom. (*See id.* ¶ 33.) However, with the exception of Mr. Green, who has settled with Procom, none of the defendants have returned any funds to Procom. (*Id.*)

## PROCEDURAL HISTORY

Procom's original Complaint, filed on February 14, 2012, asserted three claims for relief against each Defendant: (1) unjust enrichment, (2) conversion and civil theft, and (3) civil

conspiracy.  (*See generally* Doc No. 1 [Orig. Compl.])  Between March 7 and April 2, 2012, Procom served each of the defendants with both the Summons and Complaint.  (Doc. Nos. 10-17, 19.)  None of the Defendants answered, moved against, or otherwise responded to Procom's Original Complaint.

Procom then filed Motions for Entry of Default Judgment against each of the defendants.  (Doc. Nos. 23, 24, 27, 37, 38, 39, 40 & 54.)  On October 11, 2012, Chief Judge Marcia S. Krieger issued an Opinion and Order (hereinafter the "October 11, 2012 Order") denying Procom's Motions for Default Judgment and dismissing the action for lack of subject matter jurisdiction.  (Doc. No. 87.)  As is further detailed *infra*, Judge Krieger concluded that Procom had failed to establish that the court has subject matter jurisdiction over this action and, that even if subject matter jurisdiction did exist, Procom's claims were insufficiently pleaded to warrant an entry of default judgment.  (*See generally id.*)  Accordingly, Judge Krieger dismissed this action for lack of subject matter jurisdiction, but stayed the effect of the dismissal order for 14 days pending the filing of an amended complaint that cured the defects noted in her order.  (*Id.* at 11.)

Procom's Amended Complaint was timely filed on October 25, 2012, and asserts the same claims for relief as the original Complaint—i.e., claims for unjust enrichment, conversion and civil theft, and civil conspiracy.  (*See* Am. Compl.)  Procom served each of the Defaulting Defendants between November 14, and November 30, 2012.  (*See* Doc. Nos. 92-93, 96-98.)  None of the Defaulting Defendants answered, moved against, or otherwise responded to Procom's Amended Complaint.  Accordingly, the Clerk of Court entered default against these

defendants.  (*See* Doc. No. 101, filed Feb. 22, 2013.)  Procom filed its Motion for Default Judgment on February 22, 2013.

## ANALYSIS

Pursuant to Fed. R. Civ. P. 55, default may enter against a party who fails to appear or otherwise defend a lawsuit.  Here, entry of default was proper because Procom filed returns of service as to each of the Defaulting Defendants, who each failed to respond to Procom's Amended Complaint.  Before proceeding with a default judgment, however, the court must consider whether it has jurisdiction, whether the facts establish a legitimate basis for the entry of judgment, and whether the damages can be ascertained.

*A.*     *Jurisdiction*

In determining whether a default judgment is warranted, the Court must first consider whether it has jurisdiction over the subject matter and the defendants.  *Dennis Garberg & Associates, Inc., v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986).  The court must do so in consideration of the well-established rule that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action." *United States v. 51 Pieces of Real Prop.,* 17 F.3d 1306, 1309 (10th Cir. 1994).

   *1.*     *Subject Matter Jurisdiction*

Procom asserts that 28 U.S.C. § 1332(a) provides the court with subject matter jurisdiction over this action.  (Am. Compl. ¶ 11.)  Under Section 1332, federal district courts have diversity jurisdiction over civil matters where (1) the controversy is between citizens of

6

different states, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. Section 1332 provides jurisdiction only where there is complete diversity—meaning that all plaintiffs must be of different citizenship than all of the defendants. *Ravenswood Inv. Co., L.P. v. Avalon Corr. Serv.,* 651 F.3d 1219, 1223 (10th Cir. 2011).

For purposes of diversity jurisdiction, an individual is considered a citizen of the state in which he or she is domiciled. *Crowley v. Glaze,* 710 F.2d 676, 678 (10th Cir. 1983). Domicile is not synonymous with residence, but is rather a combination of physical presence in a place and a certain state of mind, that is, the intent to remain there. *Martinez v. Martinez,* 62 F. App'x 309, 313 (10th Cir. 2003) (unpublished). While a corporation is deemed a citizen of both its state of incorporation and the state where it has its principal place of business, 28 U.S.C. § 1332(c), that rule does not extend to limited liability companies (LLCs). Although the Tenth Circuit has not directly addressed the issue, the consensus among the circuits is that an LLC is deemed a citizen of all the states in which each of its members are citizens. *See Hale v. Mastersoft Int'l Pty. Ltd.*, 93 F. Supp. 2d 1108, 1112 (D. Colo. 2000); *United States v. Advisor, LLC v. Berkshire Prop. Advisors, LLC*, at *6, 2009 WL 2055206 (D. Colo. 2009).

In the October 11, 2012 Order, Judge Krieger found that the Original Complaint failed to adequately allege the citizenship of both Procom and the defendants. As to its own citizenship, although Procom alleged that it is a limited liability company with its principal place of business in Colorado and further identified Wayne Dale as its "member and agent," it did not identify Mr. Dale's citizenship, nor did it identify whether there were other members of Procom and, if so, their citizenship. (Oct. 11, 2012 Order at 4-5.) As to the Defendants, the Original Complaint

7

alleged that the LLC defendants are located in, and have their principal places of business in New York, Pennsylvania, Maryland, and Ohio. (*Id.* at 5.) However, although the Original Complaint identified Defendant Schwartz and former defendant Green as members of Defendant Real Investors LLC, it was unclear whether Messrs. Green and Schwartz are Real Investors' sole members. (*Id.*) And, as to the remaining LLC defendants, the Original Complaint failed to identify any company members at all, much less their state(s) of citizenship. (*Id.*) Finally, the Original Complaint alleged that the named individual defendants are "residents" of New York and Ohio, but failed to allege they where they are domiciled. (*Id.*)

The court finds that Procom's Amended Complaint cures the shortcomings of the jurisdictions allegations featured in the Original Complaint. First, the Amended Complaint clarifies that Mr. Dale is Procom's only member and that Mr. Dale is domiciled in Denver, Colorado. (Am. Compl. ¶ 1.) Therefore, Procom is a citizen of Colorado.

As to the individual Defaulting Defendants, Defendant Schwartz is domiciled in Ohio (*id.*¶ 6), Defendants Barbara Langner and Mann are domiciled in New York (*id.* ¶¶ 3-4), and Defendant Mechel Langner is domiciled in either New York or Israel (*compare id.* ¶2 *with* Doc. No. 101-3, Mechel Langner Aff. ¶ 2).[2]

---

[2] Although Procom alleges that Mechel Langner is domiciled in New York (Am. Compl. ¶ 2), Mr. Langner has submitted sworn testimony that he has been domiciled in Israel for the past 15 years and has not resided in New York for the same amount of time (Mechel Langner Aff. ¶¶ 2-3). Procom appears to dispute Mr. Langner's evidence of domicile. (*See* Ptlf.'s Mot. Jurisdictional Discovery, Doc. No. 129, at 4.) The court need not resolve this question for purposes of this Recommendation because, regardless of whether he is domiciled in New York or Isreal, it is clear that Mr. Langner is not a Colorado citizen.

Turning to the LLC defendants, Real Investors LLC's has five members, Defendants Schwartz, Mann, and Mechel Langner; former defendant Green; and Mr. Kasnett, who are all domiciled in either Ohio, New York, or Israel. (*Id.* ¶ 7.) The sole members of each of the remaining LLC defendants—L and M Realty Brokers LLC, First National Group LLC, and First National Management LLC—are Defendants Mann and Mechel Langner (*id.* ¶¶ 8-10), who, as discussed above, are domiciled in either New York or Israel. Accordingly, (1) Real Investors LLC is a citizen of Ohio, New York, and/or Israel; and (2) L and M Realty Brokers, First National Group, and First National Management are citizens of New York and/or Israel.

Accordingly, because none of the Defaulting Defendants are citizens of Colorado, and because the amount in controversy exceeds $75,000, the court finds that it has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a).

### 2. *Personal Jurisdiction*

In addition to subject matter jurisdiction, entry of a default judgment in a civil case requires personal jurisdiction over the defendants. *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010). The court "must determine whether it has jurisdiction over the defendant[s] before [it may enter] judgment by default against a party who has not appeared in the case." *Dennis Garberg & Assoc.,* 115 F.3d at 772; *Deville v. Wilson,* 208 F. App'x 629, 631 (10th Cir. 2006). *See also Williams,* 802 F.2d at 1202 (Defects in personal jurisdiction are not waived by default when a party fails to appear or respond).

Procom bears the burden of demonstrating that the court has personal jurisdiction over the Defaulting Defendants. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244,

1247 (10th Cir. 2000). A "plaintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assocs.*, 115 F.3d at 773 (citing *FDIC v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir. 1992)). In making this showing, the allegations in the complaint must be taken as true to the extent they are not controverted by the defendants. *Grynberg v. Ivanhoe Energy, Inc.,* 666. F. Supp. 2d 1218, 1229 (D. Colo. 2009).

A federal court sitting in diversity may assert personal jurisdiction over a defendant only if two criteria are met. "First, a federal district court may only exercise personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" *United States v. Botefuhr,* 309 F.3d 1263, 1271 (10th Cir. 2002 (quoting Fed. R. Civ. P. 4(k)(1)(A)). Second, an exercise of personal jurisdiction under state law must comport with the Fourteenth Amendment's due process clause. *Id.* In Colorado, these two inquiries collapse into one, as the Colorado long-arm statute "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions." *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1193 (Colo. 2005).[3]

To evaluate personal jurisdiction under the due process clause, the court must conduct a two-step inquiry. First, the court examines "whether the nonresident defendant has 'minimum

---

[3] Before entering defaulting judgment, the court must also address the adequacy of service in deciding whether it has personal jurisdiction over Defendant. *See United States v. Elsberg*, No. 08-cv-00522-MSK-KLM, 2010 WL 5177439, at *2 (D. Colo. Aug. 17, 2010). However, the court need not address this question because, even assuming service of process was adequate under Fed. R. Civ. P. 4, the court ultimately finds that the Defaulting Defendants lack minimum contacts with Colorado to support the exercise of personal jurisdiction.

contacts' with the forum state such that he should reasonably anticipate being haled into court there." *TH Agric. & Nutrition, LLC v. Ace European Group, Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007). If a defendant has sufficient contacts, the court then proceeds to ask "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "'reasonable' under the circumstances of a given case." *Id.*

The "minimum contacts" test may be met in either of two ways—general jurisdiction or specific jurisdiction. First, if a defendant has "continuous and systematic general business contacts" with the forum state, it may be subjected to the general jurisdiction of the forum state's courts. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984). Second, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.").

Upon review of the allegations of the Amended Complaint, it is clear that the court does not have general jurisdiction over the Defaulting Defendants. There are no allegations to suggest that any of the Defaulting Defendants regularly solicit business or maintain local office(s) in Colorado; send agents into the state on a regular basis to solicit business; hold

11

themselves out as doing business in Colorado in any way; or conduct a considerable volume of business in Colorado. *See Kuenzle v. HTM Sport-Und Freizeitgerate AG,* 102 F.3d 453, 457 (10th Cir. 1996) (citing *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1533 (10th Cir. 1996)). Thus the court considers whether it has specific jurisdiction over the Defaulting Defendants.

Procom does not specifically argue in its Motion for Default Judgment that the court has specific jurisdiction over the Defaulting Defendants. Moreover, Procom admits that none of the "Defaulting Defendants are domiciled in, citizens of, []or have a principal place of business in Colorado." (Am. Compl. ¶ 11.) Nevertheless, based on a review of Procom's others filings, it appears that Procom believes the court has specific jurisdiction over the Defaulting Defendants because its injury from the torts allegedly committed by the Defaulting Defendants was suffered in Colorado. (*See* Pltf.'s Mot. for Jurisdictional Discovery, Doc. No. 129, at 4.)

As discussed above, for the court to have specific jurisdiction over an out-of-state defendant, the minimum contacts standard "requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.,* 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King,* 471 U.S. at 472). "One way to conduct the [purposeful direction] analysis in tort cases is to consider the 'effects test' of *Calder v. Jones,* 465 U.S. 783 (1984), where purposeful direction is established if three showings are made: the defendant (a) commits 'an intentional action'; (b) that is 'expressly aimed at the forum state'; (c) with 'knowledge that the brunt of the injury

would be felt in the forum state.'" *Grynberg v. Ivanhoe Energy, Inc.,* 490 F. App'x 86, 96 (10th Cir. 2012) (quoting *Dudnikov,* 514 F.3d at 1072).

The court finds that, even taking the allegations of the Amend Complaint as true, Procom fails to demonstrate that the Defaulting Defendants purposefully directed their activities at Colorado. As alleged in the Amended Complaint, the only actions directed at Colorado were taken by Daniel Kasnett, a non-party, and his unidentified "business affiliates," who allegedly reached out to Colorado to solicit Procom's investment in the non-existent Cleveland Project. Thus, the only direct contacts with Colorado are those of a non-party, not the Defaulting Defendants.

Although it has not so argued, Procom may believe that, at a minimum, the court has jurisdiction over Real Investors LLC based on its allegation that Mr. Kasnett was acting "as an agent for Defendant Real Investors." (*See, e.g.,* Am. Compl. ¶ 50.) "The Tenth Circuit has recognized that 'a principal *may* be subject to the jurisdiction of the court because of the activities of its agent within the forum state,' but this agency theory applies only when the agent's 'acts are committed in the course of or within the scope of the agent's employment.'" *Fireman's Fund Ins. Co. v. Thyssen Mining Constr.,* 703 F.3d 488, 493-94 (10th Cir. 2012) (citing *Taylor v. Phelan,* 912 F.2d 429, 433 (10th Cir. 1990)) (emphasis in original). However, although Mr. Kasnett may be a member of Real Investors LLC, Procom's Amended Complaint does not allege that Mr. Kasnett approached Procom on behalf of Real Investors LLC. (*See* Am. Compl. ¶¶ 18-19.) Indeed, according to deposition testimony attached to the Amended Complaint, Defendant Schwartz, the managing partner of Real Investors LLC, testified that he

13

did not have any knowledge that Mr. Kasnett was involved in the Cleveland Project and had no explanation for why Procom would have transferred $189,000 to Real Investors in September 2008.[4]  (Am. Comp., Ex. 1, Deposition of Fred Schwartz, 62:7-13; 67:12-16 [Schwartz Dep.].)

Instead, it is plain from Procom's allegations regarding Mr. Kasnett's contacts with Colorado, which relate to both prior real estate investments and the one at issue in this case, that Mr. Kasnett was acting on his own behalf in soliciting Procom's $189,000 investment.  (*Id.* ¶¶ 16-17.)  Furthermore, even gratuitously assuming that Mr. Kasnett did purport to act on Real Investors LLC's behalf in soliciting Procom's investment in the Cleveland Project, there are no allegations to suggest that Mr. Kasnett had the actual or apparent authority to do so.  *See Tripoli Mgmt, LLC v. Waste Connections of Kan., Inc.,* No. 09-cv-01767-CMA-KLM, 2010 WL 845927, at *6 (D. Colo. Mar. 9, 2010) (citing *Wiley v. Mayer,* 976 P.2d 1260, 1264 (Colo. 1994) and *Johnson v. Chilcott,* 658 F. Supp. 1213, 1219 (D. Colo. 1987)) (outlining the legal bases for finding actual or apparent authority to support an agency relationship).

It is even less clear how Mr. Kasnett's contacts with Colorado can be imputed to the remaining Defaulting Defendants.  Although Procom again has not so argued, it may be that Procom believes personal jurisdiction over these defendants—as well as Real Investors LLC—is proper based on its claim for civil conspiracy.

---

[4] For similar reasons, the fact that Mr. Kasnett directed Mr. Dale to transfer the Invested Funds to a Real Investor LLC bank account is insufficient to find personal jurisdiction based on agency principles.  Indeed, Mr. Kasnett admitted that he only directed Procom to transfer the Invested Funds to this account because it was "easiest at the time."  (Am. Compl., Ex. 2, Deposition of Daniel Kasnett, 52:17-53:2.)

14

"The existence of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction." *Melea, Ltd. v. Jawer SA,* 511 F.3d 1060, 1069 (10th Cir. 2007). "However, to assert personal jurisdiction based on a conspiracy, the plaintiff must offer more than bare allegations, but rather must allege facts that would support a *prima facie* showing of a conspiracy." *Bolsa Resources, Inc. v. AGC Resource, Inc.,* No. 11-cv-01293-MSK-KMT, 2011 WL 6370409, at * 14 (D. Colo. December 20, 2011) (citing *Melea, Ltd.,* 511 F.3d at 1069). To establish a civil conspiracy, a plaintiff must prove that (1) the defendant had an object to be accomplished; (2) two or more persons agreed on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts were performed to accomplish a lawful or unlawful goal, or, one or more lawful acts were performed to accomplish an unlawful goal; and (4) the plaintiff suffered damages as a proximate result. *Magin v. DVCO Fuel Sys., Inc.,* 981 P.2d 673, 674-75 (Colo. App. 1999).

For reasons similar to those expounded by Judge Krieger in the October 11, 2012 Order, the court finds that Procom's allegations fail to establish a *prima facie* showing of conspiracy. Procom alleges only that "through their actions as members of Real Investors and taking Procom's money, Defendants Michel Langner, Mann, [former defendant] Reuben Green and Defendant Schwartz, along with Mr. Kasnett agreed and conspired to solicit Procom to wire the Invested Funds to Real Investors by misrepresenting the existence of the Cleveland Project" and "conspired and agreed among themselves and Mr. Kasnett to then distribute the Invested Funds from Real Investors to themselves and their related entities or affiliates for their own personal use." (Am. Compl. ¶ 63.)

15

As with Procom's Original Complaint, these allegations fail to outline specific agreements among the defendants that would establish a course of action. (Oct. 11, 2012 Order at 10.) Although the multiple bank transfers that occurred shortly after the Invested Funds were wired to Real Investors are suspicious, the fact that the individual defendants were members of Real Investors LLC and allegedly received portions of the Invested Funds is insufficient to demonstrate that Defendants agreed upon a course of action to solicit and misappropriate Procom's investment. Indeed, even "'[s]ilent knowledge of an unlawful act is insufficient to establish the requisite agreement.'" *Powell Products, Inc. v. Marks,* 948 F. Supp. 1469, 1480 (D. Colo. 1996) (quoting *More v. Johnson,* 568 P.2d 437, 440 (1977). Ultimately, a "plaintiff cannot succeed on its claim for civil conspiracy without showing that each defendant *agreed* to do something in furtherance of the conspiracy, knowing its improper purpose." *Id.* (emphasis added). Therefore, because Procom has not set forth factual allegations of a specific agreement between any of the defendants and Mr. Kasnett to solicit and steal the Invested Funds, Procom's Amended Complaint fails to establish a *prima facie* claim for civil conspiracy to support exercising personal jurisdiction over the Defaulting Defendants.

Having rejected the possibility of exercising personal jurisdiction based on either an agency or conspiracy theory, the court is left only with Procom's allegations that the Defaulting Defendants allegedly received portions of the Invested Funds. (*See, e.g.,* Am. Compl. ¶¶ 35, 37-39, 41-42.) Based on a recent case from this District, *Touchstone Group, LLC v. Rink,* 913 F. Supp. 2d 1063, 1075 (D. Colo. 2012), the court finds that these allegations fail to establish that the Defaulting Defendants engaged purposefully directed their activities at Colorado.

In *Touchstone,* the court considered whether it had personal jurisdiction over a law firm that allegedly participated in a Ponzi scheme that defrauded investors in Colorado by receiving at least 4 million dollars of investor funds. *See id.* at 1074-1075. The court found the plaintiff's allegation that the law firm "received funds from the forum state [to be] insufficient to establish purposeful availment." *Id.* at 1075. Instead, the *Touchstone* court found that the law firm's actions were "a passive event triggered by a third party that cannot give rise to personal jurisdiction." *Id.*

The court finds that the facts alleged in Procom's Amended Complaint are sufficiently similar to those presented in *Touchstone.* As in *Touchstone,* the Defaulting Defendants' receipt of the Invested Funds from Colorado, based on the allegedly fraudulent conduct of Mr. Kasnett, was triggered solely by the action's of a third party. Further, there are no factual allegations in the Amended Complaint establishing that the Defaulting Defendants "expressly aimed" their "intentional action[s]" at Colorado, knowing "the brunt of the injury would be felt" there. *Grynberg,* 490 F. App'x at 96 (citation and internal quotations omitted). Accordingly, the court finds that the Defaulting Defendants lack the requisite minimum contacts with Colorado to support the exercise of personal jurisdiction in this District.[5] Therefore, the court finds that

---

[5] Because the Defaulting Defendants lack sufficient contacts with Colorado, the court does not consider "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *TH Agric. & Nutrition, LLC,* 488 F.3d at 1287.

Procom's Motion for Default Judgment is properly denied for lack of personal jurisdiction.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Plaintiff Procom Supply, LLC's "Motion for Entry of Default Judgment" (Doc. No. 99) be DENIED.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 19th day of August, 2013.

BY THE COURT:

*[signature]*

Kathleen M. Tafoya
United States Magistrate Judge